**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

FILED

02 SEP 11 PM 2:03

U.S. DISTRICT COURT
N.D. OF ALABAMA

WILLIAM L. DOBBS,

    PLAINTIFF,

v.

CASE NO. CV-01-J-1633-NE

THOMAS E. WHITE,
Secretary of the Army,

**ENTERED**

SEP 11 2002

    DEFENDANT.

## <u>MEMORANDUM OPINION</u>

    This cause comes on before the court on the defendant's motion for summary judgment (doc. 23) and evidentiary submissions (doc. 24), to which the plaintiff has not responded.[1]

    The plaintiff originally filed a one count complaint claiming reprisal for engaging in protected activity.[2] (doc. 1). In this complaint, brought under Title VII, the plaintiff claims four distinct acts which form the basis for his claim of discrimination: denial of a performance award, malicious rumors begun to discredit him, dismantling of his directorate, and a ten day suspension. By prior order, the court held that the plaintiff's claims for dismantling his directorate and for denial of a performance award were barred due to the plaintiff's failure to exhaust his administrative remedies. Order of October 12, 2001 (doc. 6).

---

[1]In accordance with the scheduling order entered by this court on November 6, 2001, the plaintiff's deadline for submitting a response to the defendant's motion for summary judgment was September 3, 2002. *See* Scheduling Order (doc. 12) and Exhibit A thereto.

[2]The plaintiff actually alleges that he was subjected to a hostile environment for engaging in protected activity.



## FACTUAL BACKGROUND

The plaintiff is an employee of the United States Army Space and Missile Defense Command ("SMDC"), in Huntsville, Alabama.  Complaint at ¶ 3.  He was previously a Deputy Director of the Weapons Directorate, within the SMDC, but has since been reassigned to a directorate that has no resources or personnel.  Complaint at ¶ 10; plaintiff depo. at 18; 37-41.  The plaintiff's supervisor, William Reeves, Jr., was also so reassigned. Complaint at ¶ 10.  Mr. Reeves is the only black Senior Executive Service employee in SMDC.  *Id.* at ¶ 11; plaintiff depo. at 44.  Steve Tiwari, an Indian, also served under Reeves. Complaint at ¶ 12.

In May, 1999, Jess Granone became the Director of the SMDC Technical Center, and therefore was Reeves', plaintiff's and Tiwari's supervisor.[3]  Complaint at ¶ 14; defendant exhibit 3.  Prior to his appointment as Director, Granone asked for plaintiff's support for his promotion to this position.  Complaint at ¶ 16.  Plaintiff told Granone he supported Reeves for the job.  *Id.*  Granone thereafter attempted to ruin Reeves' and plaintiff's careers.  *Id.* at ¶¶ 16, 18.

Tiwari was Program Manager of the Kinetic Energy Anti-Satellite (KE-ASAT) program within the Weapons Director.  Plaintiff depo. at 59.  While Granone was acting Director, he decided to move the KE-ASAT program away from the Weapons Directorate. Defendant exhibit 2.  Thereafter, Tiwari became the target for accusations of sexual

---

[3]Granone was appointed as Acting Director in January, 1999 when Dr. Richard Fisher retired from that position.  Defendant exhibit 1; plaintiff depo. at 84, 97.  *See also* defendant exhibit 3.  Prior to this time, Granone was Reeves' peer.  Plaintiff depo. at 84.

harassment. Defendant exhibit 12. Somehow, the investigation of these allegations revealed questions concerning Tiwari's submission of travel vouchers. Complaint at ¶ 20; defendant exhibit 12. Meanwhile, Granone proceeded with his plans to reassign KE-ASAT to another directorate. Defendant exhibit 4.

The plaintiff asserts that because of his support of Tiwari and Reeves, both minority employees, Granone and SMDC Commander Costello both took actions against him in retaliation for his protected activity, and began dismantling the Weapons Directorate and plaintiff's division. Complaint at ¶¶ 17, 19. They removed programs and personnel from the plaintiff's supervision, which in turn jeopardized the plaintiff's rank as a GS-15. *Id.* at ¶ 19.

On May 2, 2000, the plaintiff was threatened with a ten day suspension. Defendant exhibit 7. The plaintiff states this was done in retaliation for his approval of Tiwari's travel vouchers and overtime expenses. *Id.*; Complaint at ¶ 20. The plaintiff filed a timely EEO charge concerning this event, although no such suspension was ever imposed. Defendant exhibit 5. Ultimately, plaintiff and Reeves were reassigned to an office with few employees and no budget. Complaint at ¶ 21.

The sole count in the plaintiff's complaint is for reprisal under Title VII, 42 U.S.C. § 2000e. The court finds, in light of the facts of this case, that plaintiff asserts he was retaliated against for engaging in protected activity, namely supporting the causes of two minority co-employees. The retaliation took the form of an unfounded rumor, as well as the proposed suspension.

3

## II. Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.*, 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of genuine issues of material fact. *Id.* at 323. The burden then shifts to the non-moving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324; Fed.R.Civ.Pro. 56(e). In meeting this burden the non-moving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate there is a "genuine issue for

trial." Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 587; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"The mere existence of some factual dispute will not defeat summary judgment unless the factual dispute is material to an issue affecting the outcome of the case .... A genuine issue of material fact does not exist unless there is sufficient evidence favoring the non-moving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)). All "reasonable doubts" about the facts and all justifiable inferences are resolved in favor of the nonmovant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). However, all "doubts" need not be so resolved. *Barnes v. Southwest Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987).

### III. Legal Analysis

Having examined the facts in the light most favorable to the nonmoving party, the court finds that no genuine issue of material fact exists and that the defendant is entitled to judgment as a matter of law.

The plaintiff asserts that he was retaliated against in violation of Title VII. To establish a prima facie claim of retaliation, the plaintiff must show: (1) he participated in protected activity; (2) he suffered an adverse personnel action; and (3) a causal link between the adverse action and the protected activity exists. *Wideman v. Wal-Mart*, 141 F.3d 1453, 1457 (11th Cir.1998).

The court assumes, without deciding, that plaintiff's support of Reeves for Granone's position, and defense of Tiwari during suggestions of impropriety, could reach the status of protected activity.  *See* 42 U.S.C. § 2000e-3(a) (stating that an employee is protected from discrimination if "he has opposed any practice made an unlawful employment practice by this subchapter"); *Clover v. Total System Services, Inc.*, 176 F.3d 1346 (11th Cir.1999).  The court does not decide this issue, as the court finds that no adverse employment action was taken against the plaintiff.  To constitute an adverse action sufficient to support a retaliation claim, the job action must have affected a term or condition of employment; the action is not adverse "merely because the employee dislikes it or disagrees with it."  *Snellgrove v. Teledyne Abbeville,* 117 F.Supp.2d 1218, 1243 (M.D.Ala.1999); citing *Malladi v. Brown,* 987 F.Supp. 893, 915 (M.D.Ala.1997) (quoting *Perryman v. West*, 949 F.Supp. 815, 819 (M.D.Ala.1996)).

Thus, even if the plaintiff did engage in protected activity, he can not establish a prima facie case.  Under 42 U.S.C. § 2000e-16(d), which enables federal employees to sue for discrimination, the discrimination must reach an ultimate employment decision, such as hiring or firing.  *See Page v. Bolger*, 645 F.2d 227, 233 (4th Cir. 1981) ("it is obvious to us that there are many interlocutory or mediate decisions having no immediate effect upon employment conditions which were not intended to fall within the direct proscriptions of § 717 and comparable provisions of Title VII") adopted by the Eleventh Circuit Court of Appeals in *Ferguson v. Veterans Administration*, 723 F.2d 871 (11th Cir.1984).  *See also Wideman*, 141 F.3d at 1456 n. 2.

The adverse employment actions about which plaintiff complains are limited to two discrete incidents. The first is that his superiors spread unfounded rumors about him,[4] and the second is that a ten day suspension of him for his approval of Tiwari's vouchers was proposed, but never imposed. Unfounded rumors are not "ultimate" employment decisions, and hence do not satisfy the criteria for an adverse employment action. *See e.g., DeAngelis v. El Paso Municipal Police Officers,* 51 F.3d 591, 594-96 (5th Cir.1995) (finding four printed derogatory references to [plaintiff] in two and a half years do not evidence sufficient hostility toward her as a matter of law); citing *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 2405 (1986). Similarly, a proposed suspension is not sufficient for an adverse employment action. *See e.g., Walker v. Thompson,* 214 F.3d 615, 629 (5th Cir.2000). Rather, a proposed suspension is the very type of action the Court in *Page* found should not constitute an "adverse employment action." *Page,* 645 F.2d at 233.

In other words, while plaintiff's job may have become more oppressive, he has shown no evidence of a tangible adverse action being taken against him. *See Davis v. Town of Park Lake,* 245 F.3d 1232, 1239 (11th Cir.2001). These two allegations of discrimination simply do not rise to the level of an adverse employment action sufficient to establish a prima facie case of retaliation for engaging in a protected activity under Title VII.

## CONCLUSION

The court having considered the foregoing and finding that the plaintiff has failed to establish any genuine issue of material fact, the court is of the opinion that the defendant's

---

[4]The rumor asserted by plaintiff was that he was not a "team player." Defendant exhibit 5, at 7-8.

7

motion for summary judgment is due to be granted, and this case dismissed.  The court shall so Order.

**DONE** this the ___//___ day of September, 2002.

INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE